IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BERNICE TURENTINE, | § | |
|    Plaintiff | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | |
| | § | |
| | § | |
| FC LEBANON II, LLC d/b/a ALAQUA | § | |
| AT FRISCO GARDEN RISE | § | |
| APARTMENTS aka FL. CAPITAL | § | |
| REAL ESTATE PTRS 26 LTD, and | § | |
| DAYRISE RESIDENTIAL, LLC, | § | |
|    Defendants | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

**COMES NOW**, Plaintiff, Bernice Turentine (hereinafter "Plaintiff"), and complains of

Defendants, FC Lebanon II, LLC d/b/a Alaqua at Frisco Garden Rise Apartments aka Fl. Capital Real

Estate Ptrs 26 LTD, and DayRise Residential, LLC (hereinafter referred to collectively as "Defendants" or

"Alaqua at Frisco" or "DayRise"), and would respectfully show unto the Court as follows:

**I.**
**JURISDICTION AND VENUE**

1.      This Court has jurisdiction over the federal claims asserted herein pursuant to 28

U.S.C. §§1331 and 1343.  In addition, Plaintiff invokes this Court's jurisdiction pursuant to (1) the Civil

Rights Act of 1866, 42 U.S.C. §§ 1981 and 1982 (hereinafter "Section 1981" and "Section 1982"); (2)

Sections 3604(b) and 3604(f)(1)-(2) of the Fair Housing Act (hereinafter "FHA"), enacted as Title VIII

of the Civil Rights Act of 1968, as amended; (3) Title III of the Americans with Disabilities Act

(hereinafter "ADA"), as amended, 42 U.S.C. § 12182; and (4) Section 504 of the Rehabilitation Act

(hereinafter "Section 504"), 29 U.S.C. § 794(a).

2.      Venue is proper in the Northern District of Texas, Dallas Division, pursuant to 28 U.S.C. §1391, because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## II.
## PARTIES

3.      Plaintiff is a black/African American citizen of the United States and a resident of Dallas County, Texas.  At all times relevant hereto, Plaintiff was a tenant of Defendants. Plaintiff has been subjected to unlawful housing practices committed in Dallas County, Texas by employees, representatives and/or agents of the Defendants.

4.      Defendant, FC Lebanon II, LLC d/b/a Alaqua at Frisco Garden Rise Apartments aka Fl. Capital Real Estate Ptrs 26 LTD, is a foreign limited liability company licensed and registered to business in Texas, and may be noticed of this lawsuit by serving its registered agent, Corporation Service Company dba CSC – Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

5.      Defendant, DayRise Residential, LLC, is a foreign limited liability company licensed and registered to business in Texas, and may be noticed of this lawsuit by serving its registered agent, Registered Agent Solutions, Inc., 1701 Directors Blvd., Suite 300, Austin, Texas 78744.

## III.

## FACTS AND CAUSES OF ACTION

6.      This action is authorized and instituted pursuant to Sections 1981, 1982, 504, the ADA, and the FHA.  This is a legal proceeding for legal and/or equitable relief available to secure the rights of the Plaintiff under these statutes.

7.      Alaqua at Frisco's management company, DayRise, speaks highly of its business

practices. "We rise to shine to make *everyone* feel at home through *high-quality* multi-family

housing *experiences*." "We are a team of professionals who deliver *exceptional service* and

build long, *trusting relationships* with our residents." However, as explained below, Plaintiff

and her children were not made to feel at home through high-quality housing experiences; they

did not receive exceptional service; and they do not have a trusting relationship with Alaqua at

Frisco or DayRise and their employees, representatives and/or agents.

8.      Plaintiff and her family have lived at Alaqua at Frisco since October 2020. Plaintiff's

family unit consists of her and her 4 children: Kahron Garner, Eric Turentine, Dawson Turentine, and

Savannah Turentine. On September 20, 2021, Kristi Naumann, an employee of Defendants, sent an email

to the residents of Alaqua at Frisco stating that a child had opened up the pins on 8 fire extinguishers and

sprayed them all over the lower ground floors at Buildings 1, 3 and 9, and also had poured Pennzoil oil on

the ground. She also stated that the police were called out and that they took fingerprints from the fire

extinguishers to discover the identity of the individual(s) involved.

9.      On or about September 27, 2021, Plaintiff signed a new lease for a rental term beginning on

December 1, 2021, and continuing through November 30, 2022. On September 30, 2021, 3 days later, the

Defendants posted an eviction notice to Plaintiff's front door giving her until October 4, 2021, to vacate the

premises. The Notice to Vacate was based on an alleged "non-delinquency breach of lease" occurring on

September 19, 2021 and September 29, 2021. The Defendants listed Plaintiff's minor child, Eric Turentine,

as the "person involved." The Notice to Vacate was signed by Kristi Naumann on September 30, 2021.

10.     The alleged breach concerned Paragraph 20 of the Lease titled, "Prohibited

Conduct." Ms. Naumann highlighted portions of this lease provision and attached it to the Notice

to Vacate. The highlighted portions state the following: "(a) criminal conduct, regardless of

whether or where arrest or conviction occurs" and "(c) disturbing or threatening the rights,

comfort, health, safety, or convenience of others (including our agents and employees) in or near

the apartment community."

11.    Shortly thereafter, Plaintiff voluntarily took her son Eric to the police station to have his

fingerprints taken and spoke to Detective Aaron Steensma of the local police department. To date, no one

from the police station or anyone employed by the Defendants have contacted Plaintiff to confirm that

Eric's fingerprints match the fingerprints taken from the fire extinguishers. There is also no substantiated

proof showing Eric poured the Pennzoil oil on the ground or tampered with packages of other residents as

was alleged in the Notice to Vacate. Thus, Plaintiff and her children were told to vacate her apartment on

mere allegations and without evidence of criminal activity.

12.    Equal access to and enjoyment of housing in the United States is a fundamental right. A

person's race, color, disability and/or familial status should never determine whether or not they have

access to a place to call home. Case like Plaintiff's demonstrate that there is still work to be done to ensure

that all people, regardless of race and/or color, disability, and familial status, have equal access to housing.

These tenets apparently mean nothing to the Defendants as they do not even have a nondiscrimination

policy and/or provision in the Lease provided to Plaintiff.

13.    Plaintiff can make a prima facie case under the above-referenced causes of action by

showing that the Defendants (1) wrongfully instituted eviction procedures (including posting a 4-day

eviction notice on Plaintiff's front door); (2) wrongfully accused her 11-year-old son, who is autistic, of

theft and vandalism on the basis of mere allegations and without evidence of criminal activity; and (3)

retaliated against and created a hostile housing environment concerning the terms, conditions, and/or

privileges of the rental of a dwelling, amongst other things, on the basis of race and/or color, disability

(autism and Plaintiff's multiple requests for a garage to be  used for parking and/or a storage facility for

her autistic son), and familial status (e.g., imposing overly restrictive rules about use of the common areas

by children, including but not limited to, requiring children to be supervised in order to use common

areas). Additionally, Plaintiff complained to management on July 1, 2021, regarding racially

discriminatory activity at the apartment complex, as well as being forced to supervise her children while

they play outside (the same children whose names were not added to Plaintiff's first lease until 9 months

after her and her children had moved in). Families should not be penalized for letting their kids be kids.

14.     Finally, there are online reviews from current or former tenants at Alaqua at Frisco and

Defendant's Lebanon Ridge Apartment Complex where the Defendants are accused of racially

discriminatory practices, wherein Defendants are accused of subjecting African-American and/or disabled

residents to less favorable rental terms, conditions, and privileges as compared to similarly-situated white

residents.

**IV.**
**DAMAGES**

15.     Peace of mind is priceless. The below photographs show the peace of mind Plaintiff

and her children enjoyed before this incident.

















16.    Plaintiff no longer finds joy in the simple pleasures of life: eating, socializing with friends and family, and exercising, amongst other things. She now has trouble sleeping. She lives in fear for the safety and well-being of her children. She cannot concentrate on anything for more than 10 minutes without thinking about the Defendants' wrongful and unlawful actions against her and her children. She has suffered severe mental depression and apathy. She has also suffered headaches, chest pain and anxiety. She has suffered from embarrassment.

17.     The following is Plaintiff's own account of how this incident has completely

changed her life and the lives of her children:

> "From the time I received the Notice to Vacate, the very first emotion I felt was
> hopelessness. They had me really thinking that my son was a criminal and that he was
> going to be locked up. I was scared and extremely sad. I have not slept in weeks. My
> lupus has been attacking my immune system due to the stress. My hair has been falling
> out. I have not been myself since September 30, 2021. I no longer leave the house if it is
> not important. I do not have any family in town to help me pack or move, or else we
> would have already moved out by now, because I no longer feel comfortable living at
> Alaqua with my children. My family is very worried about us. One of my cousins drove
> here from out of town to come visit with us to cheer me up. I received the Notice to
> Vacate on my birthday. I had to cancel all of my celebration plans so I could try to find
> somewhere for us to move within the next 4 days. I suffered headaches, general body
> aches and fatigue, blurred vision, and muscle cramps and spasms, some of which are the
> result of my lupus flair ups caused by stress. I have also suffered from extreme fear. Fear
> of letting my children go outside to play. I do not want them to even leave my sight
> because of this incident. My son Eric thinks all of his friends have been taken from him.
> He feels like a bad person and feels like no one wants to be around him anymore. My
> oldest son has been sad and worried about being homeless and having to leave his school
> and friends."

18.     Defendants' policies and practices do not create an equal playing field for African

American/black tenants.

19.     The intentional discrimination and disparate impact described above is ongoing and

constitutes a continuing violation of the civil rights laws.

20.     Plaintiff has been injured by the Defendants' unlawful conduct.

21.     Plaintiff was subjected to and harmed by Defendants' pattern or practice of discrimination

and unlawful policies and practices.

22.     Plaintiff has lost wages and other benefits, suffered emotionally, and suffered irreparable

harm to her and her children's reputation as a result of Defendants' unlawful conduct and discriminatory

practices. Defendants' actions have caused and continue to cause Plaintiff substantial losses in an amount

to be determined by a jury.

23.    The Defendants' conduct toward Plaintiff and her children caused her severe emotional distress, pain and suffering and/or other nonpecuniary losses, for which Plaintiff seeks past and future compensatory damages.

24.    The amount of damages which Plaintiff seeks herein exceeds the jurisdictional minimum of this Court.

25.    All conditions precedent to the filing of this action have occurred or have been fulfilled.

26.    Plaintiff seeks statutory damages, back pay and front pay and/or lost wages from the past and future, all actual monetary losses, liquidated damages, attorney's fees, expert witness fees, costs, prejudgment and post judgment interest, and such other and further legal and equitable relief to which Plaintiff is entitled under the above-referenced statutes.

27.    Plaintiff is entitled to actual damages, including pecuniary damages, mental anguish and/or emotional pain and suffering, inconvenience, and loss of enjoyment of life in the past and in the future, and such other and further relief to which Plaintiff is entitled because of the actions and/or omissions complained of herein.

## V.
## JURY DEMAND

28.    Plaintiff respectfully requests a jury trial.

## VI.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff respectfully prays that Defendants be cited to appear, and, that Plaintiff be awarded judgment against Defendants for statutory damages, compensatory, punitive and general damages, back pay, front pay and/or lost wages and benefits in the past and future, all actual monetary losses, liquidated damages, attorney's fees, expert witness fees, costs,

prejudgment and post judgment interest, and such other and further legal and equitable relief to which

Plaintiff is entitled.

Respectfully submitted,

IWU & ASSOCIATES

**/s/ Marshay Iwu**
Marshay Iwu
State Bar No. 24083204
P.O. Box 851553
Mesquite, Texas 75185-1553
Telephone: (214) 417-2738
Telecopier: (214) 272-3186
marshayiwu@lawyersdemandingjustice.com

**ATTORNEY FOR PLAINTIFF**